Case number 25-1796. Venezuela US SRL v. Bolivarian Republic of Venezuela Appellant. Mr. Perla for the appellant. Mr. Conlon for the appellate. Whenever you're ready, Mr. Perla. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. Juan Perla of Curtis Malay for the appellant, the Republic of Venezuela. This appeal presents a question that was left unanswered by this Court in Valores, and that is whether recognizing and enforcing an award that is governed by the New York Convention violates US public policy where the arbitral tribunal and the petitioners chose to deal only with the Maduro regime after it was de-recognized by the United States and therefore lacked any authority to speak for or bind the Venezuelan state as a matter of US law. Although it's a novel question, the principles that decided are centuries old. From the founding, it was understood that only the executive branch has the power to recognize the legitimate government of a... Mr. Perla, I know how important the recognition power is for Article 2, but I'm wondering, I mean, here Venezuela didn't make any objection before the tribunal about the question of representation. So the arbitral tribunal, unlike in Valores, made no statement about which council was legitimate or whether they were representing the properly recognized government of Venezuela. There was no challenge at all. So how can, you know, confirmation of the word here even implicate the recognition power? The award here doesn't say anything about the legitimate government or the council representing the government. Well, Your Honor, first of all, the interim government, the recognized government, did not have an obligation to intervene at that point. It was not put on notice. As the district court here recognized, there are other jurisdictions outside of the United States that recognize the Maduro regime, and there was no way to anticipate that the U.S. would come to the U.S. to enforce this award. Also, there is an analogous situation, the Pemex case, where it didn't matter what the foreign tribunal was purporting to do or thought they were doing. In that case, it was whether the Mexican court had retroactively applied the relevant statute. And the Second Circuit looked at that and said, in fact, the Mexican court said we're not doing that. So it wasn't even silent. They were saying they disavowed that they were doing that. And the Second Circuit said what we look at is the effect. What is the effect of recognizing that foreign tribunal's judgment? In Pemex, there's an actual legal effect. There's a disagreement about what the tribunal did, whether it was retroactive or not. So they can say it's not retroactive, but a U.S. court can look and see whether something's retroactive. Here, there's no consideration or adjudication at all by the arbitral tribunal because Venezuela, you know, the interim government never made any kind of challenge before the tribunal. Well, the recognition can be implicit, Your Honor. It doesn't have to be explicit. The tribunal doesn't have to say we are choosing one over the other or we are formally recognizing the Maduro regime. It is the conduct of allowing the Maduro regime to come in and speak on behalf of the state as if it were the legitimate government of the state that incurs the infringement of the recognition doctrine because it would be inconsistent with the recognition of the National Assembly and its leadership. For the same reason that you just said, why would Venezuela challenge it? Because some countries recognize the Maduro regime. Why would the arbitral tribunal feel the need to question who was representing Venezuela if Venezuela made no challenge to it? Well, that's a representation by the Maduro council. I mean, that I mean, the argument kind of goes both both ways. I don't think I don't think so, Your Honor, because the tribunal may be doing things that it thinks are consistent with laws that apply to it and that may apply in other jurisdictions. It's not necessarily looking proactively to make sure that its award will be enforceable as a matter of public policy in every single jurisdiction. Frankly, that would have been on the U.S. to alert the tribunal to the fact that there was a problem that for them might have consequences if they try to enforce the award in the United States. And that is the United States is supposed to intervene in international arbitration involving commercial transactions between a company and another foreign country. I mean, are you suggesting the U.S. government? No, no, Your Honor. That seems the U.S. outlandish. No, Your Honor, the U.S. the petitioner. The U.S. OK. OK. Thank you. Yeah. So it would have been incumbent on the U.S. to alert the petitioner that there might have been a problem. In fact, the U.S. cites an example of Conoco. It's at JA94. Conoco was arbitrating with Venezuela at the time that the recognition took was affected. And Conoco allowed for both governments to participate. And then they brought the award to the U.S. They were concerned that if they brought the award to the U.S., it might confront a public policy challenge. So they made sure that they prevented that problem from arising because they anticipated potentially bringing it to the U.S., which they did. The U.S. did not do that here. So it was not a problem that the U.S.-recognized government did not attempt to intervene in the arbitration because that would have not been necessary if the award was not going to be enforced in the U.S. It also doesn't have any implications for purposes of waiver or forfeiture because the public policy exception cannot be waived under this court's decision. What did the arbitrators do, if anything, to acknowledge the receipt and consideration of filings by the counsel that purported to represent basically the counsel that replaced you? They allowed it and welcomed it without giving us any notice of the purported attempt to change. We didn't receive any notice. You said they allowed it, but I mean, this is a friendly question, I think, because I bet they did more than just passively remain silent. Did they say or write anything to suggest we are considering the filings by the new counsel? Yes, Your Honor. What you mean is they didn't just allow the counsel to be changed. They then received submissions from the Maduro regime's representatives. They had an entire damages proceeding to determine what the amount of the liability would be. All of those acts were undertaken by the arbitral tribunal. The proceeding was live. It was an oral argument. I believe it was. It was not just on paper. That's correct, Your Honor. There was a proceeding, I believe, that dealt with the damages at a hearing. It is taking that award, all of the United States, and asking this court to convert what is otherwise a quasi-contractual private arrangement and give it the imprimatur of the court by converting it into a U.S. judgment. That would be inconsistent with the U.S. executive's recognition of only the National Assembly as being able to speak and bind the Republic. That is what makes a New York Convention Award significantly different from the LORAS, the Ixod Award, because the Ixod Award comes to the U.S. already as a U.S. state court judgment entitled to full faith and credit in the first instance. Was Conoco an Ixod or a New York? Conoco was an Ixod Award, I believe, where the issue arose. But I think that was before the LORAS. So I believe Conoco was probably cautiously avoiding any potential defect of litigating only with the Maduro regime that was derecognized by the United States, because they were going to come to the U.S. and enforce the award. And so that would have been the appropriate thing for the U.S. to do in the arbitration if they intended to come here. And this is a significant infringement on the executive, but it's a matter of U.S. public policy because the recognition doctrine is meant to govern not just the government, but also the business transactions and commercial transactions that private parties enter into with the Venezuelan state during the time period in which the U.S. recognizes a different government than who may be purporting to be acting on behalf of the state outside of the United States. And that comes straight from the Supreme Court's decision in Guaranteed Trust, where they say, and I quote, the very purpose of the recognition by our government is that our nationals may be conclusively advised with what governments they may safely carry on business transactions and who its representatives are. And then it goes on to say, quote, recognition would be but an idle ceremony yielding none of the advantages of established diplomatic relations in enabling business interactions to proceed if they didn't deal with the recognized legitimate government. So this is a matter that goes beyond just a formal acknowledgement of who the Venezuelan government is. It is meant to impact the way that we as a nation and the people here interact with that. Do you think we would benefit from asking the Department of Justice if they have views about the public policy exception here, its applicability? Specifically, the public policy. Your Honors, you're obviously welcome to ask the views of the U.S. government. I think we have everything we need from the U.S. government to make the Maduro very clear recognition of the National Assembly. We have a public policy exception that allows for refusal of this award, and we have a long history of jurisprudence, constitutional provisions that elevate the recognition doctrine to the level of U.S. public policy, including ink decision and others. Mr. Perlow, I mean, okay, even if we assume that, you know, the recognition power is something that could implicate the public policy defense under the New York Convention, how would our confirmation of this award actually run afoul of the recognition power? So there's an award that says nothing about representation or, you know, the legitimate counsel or the legitimate recognized U.S. government. How would our decision actually implicate that public policy? I mean, under the reasoning of Valores, Valores basically says it doesn't in facts that are, you know, more favorable in Valores than they are here. Well, I'll take that in two part, if I may, Your Honor, and I see one at a time. I think what Judge Walker was mentioning is significant, which is not only was there a swap of counsel that was recorded in the award, but there were submissions that were treated as if they had been submitted by the Venezuelan state. There were hearings that were held where the Maduro regime's representatives purported to speak for the Venezuelan state. All of that was factored into determining what the damages were into deciding what liability the Venezuelan state would have, and it was done without the presence of the U.S. recognized government. And that is The 11th Circuit, for example, in Luke Oil, confronted the argument by the Maduro regime appointed a board of the national oil company, PDVSA, who said, just let us in because we have the same interests ultimately as the Guaido appointed board, so we can carry the water for the national oil company that is owned by Venezuela. And the 11th Circuit said, no, because you may have, they may desire the same outcome, but the recognition that the U.S. government has made requires us to not give you any authority, Maduro regime appointed board, and allow, and we would only be able to hear and give credit to the statements of the Guaido or National Assembly recognized board. So I think that Judge Walker makes some very good points about that. And, and so the, the difference with the Valores is that in Valores, the judgment or the ICSID award is already a judgment entitled to full faith and credit. But that was not, that was not the reasoning, and like the Valores reasoning, there was, there was reasoning about the ICSID judgment, but then the discussion about the recognition power is, does not turn on, on the way ICSID works. It turns on the specific facts of the case and says, nothing we would do here would be running, you know, into the recognition power. So I don't think that's quite right, Your Honor. The way I read Valores, it was focused very specifically on ICSID awards. It was very much focused on the uniqueness of the ICSID convention, how it is insulated and self-contained, how if the ICSID institution sees the award as binding, full faith and credit means that the U.S. courts must also treat it as binding. That was in the discussion of Valores about full faith and credit. And then the panel separately considered, even if there should be full faith and credit, does this, you know, recognition power argument undermine, you know, our decision to give it full faith and credit? Well, I mean, I mean that, you know, I mean, you know, I'm interested in your thoughts on why that's not the right way to read that, the decision, but. I think it actually helps us, Your Honor, that the court in Valores analyzed first, whether the award was entitled to full faith and credit as a state court judgment and then said, yes, it is. And then said, therefore we can't do anything more. And in fact, the court says, you know, notes, there is no roving public policy exception to full faith and credit. So whatever implications might come of the U.S. recognition, it's not something that we can look at. But the court also said that in enforcing the award, the court is not recognizing any regime as the current government of Venezuela. And if that's true, there's no contradiction between the recognition clause and the judicial enforcement and recognition of this award. And I don't know how you get around it. Well, Your Honor, I don't think that it is, that can be read outside the context of it being an exit award. In fact, both places where the court explained this very issue of not equivalent to recognition or not implicating the recognition power, it made very specific that it was referring to exit awards. And it makes sense to treat it that way because as the court analyzed, Congress implemented a statute that gave it full faith and credit and treated it as if it was already part of the U.S. legal system. The president ratified the exit convention and signed the implementing statute. So there was an agreement between the executive, between Congress that when it dealt with exit awards, which are very special, which are very unique in terms of the way that they're structured under the convention, we would not be looking behind what the tribunal did because it's a self-contained system. And we would be treating it as if it were a final judgment of a state court that was already part of our legal structure. That is not what happens with the New York Convention Award, which is in the nature of a contract as this court and the Supreme Court have observed. And it is the act of converting it into a judgment through the confirmation and enforcement process that you give it the incurs the implicit, if not explicit contradiction between what the tribunal did in terms of allowing the Maduro regime to speak and act for the Venezuelan state and the executive's recognition in the United States that Maduro is not the head of state. His acts cannot be given the legitimacy of being the recognized government because then it would result in things like, is he entitled to immunity? Is, you know, other things that might start to sound in the fact that there is a contradiction between what the tribunal did and what the executive. Mr. Perley, Venezuela is not bringing an inadequate representation defense here under the New York Convention. And I assume that's maybe because you can't demonstrate prejudice from adequate representation. So there's no, I mean, that is also another exception to the New York Convention is lack of adequate representation. But am I correct that Venezuela is not bringing such a challenge? We're not trying to get within that exception? We haven't invoked that here, Your Honor, because the public policy exception is really the most relevant and applicable exception here. Again, under the public policy exception, if we're right, that the recognition doctrine is a public policy, I think Luke Oil is a very good, from the 11th Circuit, is very instructive on the point that it doesn't matter whether the interests and the advocacy may have been aligned and may have been adequately represented by the Maduro regime. What matters is that allowing the Maduro regime to speak for the Venezuelan state and then enforce that award as if it had been the Venezuelan state that had appeared and defended would be a contradiction of the executive's recognition power. Why doesn't accepting your argument allow nations to, you know, play games with this, right? You know, you kind of allow this to go forward, a large judgment issues against Venezuela, not challenged before the arbitral tribunal, and then you come to enforcement in the U.S. courts, claim the public policy exception. Again, Your Honor, I think it's because the New York Convention has more than, I believe, 190 government parties to it. So not all of them recognize the National Assembly. Many of them recognize the Maduro regime. So the U.S. could very well have a strategy where it's trying to enforce its award and litigate with the Maduro regime and has, at its availability, these other jurisdictions where they can go and try to enforce their award. But if they're going to come to the United States, they have to make sure that they are not incurring in some kind of violation that might implicate the public policy as it would of any other country. If they're looking to have a global enforcement strategy for their award, they have to be careful to not do things in the arbitration that could incur problems as a matter of public policy in the different jurisdictions where they're going. That's what Conoco did, and it's, you know, their own submission that they point to, and that would have avoided any kind of problem that they had coming here to the United States. So we don't think that it is for the U.S.-recognized government, necessarily in the and cure the problems that the petitioners may be incurring when they're litigating with one government or the other. So I don't think that that avoids the problem that is presented here as a matter of U.S. public policy. See if my colleagues have any further questions. Not me, no. Okay, thank you. We'll hear from Mr. Conlon. Good morning. May it please the Court. John Conlon, representing Venezuela, U.S. SRL. Refer to it as VUS, the appellee in this matter. VUS seeks confirmation of an award against Venezuela based on the refusal of a Venezuelan state-owned company to pay dividends to the U.S. Venezuela's objection to confirmation under Article 5.2b of the New York Convention that recognition and enforcement would violate U.S. public policy. Requires it to establish, first, confirmation of an arbitration award against Venezuela is tantamount to recognition of the Maduro regime and that such recognition infringes on the exclusive power of the executive to recognize the representative. Mr. Conlon, I think you may be correct with where you're going, that we may be able to recognize this award without our Court recognizing the Maduro regime as we did. I mean, that's the holding from a few years ago. I think the problem for you, though, is that we can't recognize this award without holding that it is U.S. public policy to allow arbitration against a nation's people in absentia. Isn't that what happened? First of all, isn't that correct? I mean, do you agree that the nation of Venezuela, their people, were not represented at the damages phase of this arbitration? They were absent. Well, the recognized government of Venezuela participated in the jurisdictional phase. My question is about the damages phase. At the damages phase, Venezuela was represented by the Maduro regime in that arbitration. That is to say that the people of Venezuela were represented by fraudsters and imposters who we, as our government has said, have no more connection to them than the Stuart monarchy has to the United Kingdom. Their time is over. They're not the sovereign anymore. Well, I would say with respect to the ability of the Maduro regime to act on behalf of Venezuela in arbitrations, that's precisely what happened in the Valores case. The Maduro regime represented Venezuela in the annulment portion of the exit proceeding in that but it didn't matter there whether recognizing that award was in U.S. public policy or not because exit didn't have a public policy exception. There was no public policy exception but the court was presented specifically with the question and did analyze the issue as argued by Venezuela that with respect to exit in Valores, Venezuela argued that in exceptional cases, certain courts have held that the full faith and credit will not be accorded to state court judgments, regular on their face, where to do so would defeat a vital and overriding federal interest. Essentially, the public policy argument that they're making here. I read it to say full faith and credits bar against re-litigation is unyielding followed in the next citation with a parenthetical that says recognizing lack of jurisdiction as a basis to deny full faith and but noting that the Supreme Court's decision support no roving public policy exception to the full faith and credit due judgment. So what Valores said is that when it comes to full faith and credit, there is no roving public policy exception but here there is a roving public policy exception. It's expressed. It's in the treaty. But it was not considered under the context of the New York Convention public policy exception, but the very same issues were considered by the court in Valores in addressing these issues. Mr. Conlon, let me ask you this hypothetical. Let's assume for the sake of hypothetical that Valores is not completely controlling, that it leaves us room to try to figure out whether recognition here would be consistent with U.S. public policy. Let's imagine that there was an arbitration and the damages phase of that arbitration against the United Kingdom. I mentioned this earlier. The descendants of the Stuart monarchs fired the United Kingdom's attorneys and then hired attorneys who purported to represent the United Kingdom for the entirety of the damages phase and then the arbitrators awarded damages and then the other side seeks to enforce that arbitration, seeks to get recognition of that arbitration award in the United States. Don't you think it will be against U.S. public policy to recognize an arbitration award against the United Kingdom when the people of the United Kingdom were not at all represented? It's not even a matter of adequate representation. There's no representation. It's the difference between ineffective assistance of counsel and no counsel. Well, I think if it were like the situation presented in Valores where under the rules of the arbitral regime, it was proper for, in this case, the Stuart dynasty to represent the people of England in connection with that arbitration, then I don't think it would be against U.S. public policy. Whether that representation was adequate or not under the circumstances would be a separate issue. If the Stuart dynasty did not properly or adequately under due process argument represent the people of England, then I think that's a separate question. I'll mull that over. With respect to Valores, this court squarely held that judicial confirmation of an exit award against Venezuela, even where Venezuela was represented by the derecognized Maduro regime during the arbitration process, does not constitute recognition of any government. As this court explained, confirming an arbitral award is not equivalent to recognition of the Maduro regime and does not imply a denial of the president's recognition of the interim government. That reasoning applies with full force here and is dispositive of a Collins argument. And Valores, this court observed. Can I ask you a conceptual question about this? Because in considering the public policy defense, do we have to determine, you know, will the recognition power is, you know, legitimately within the public policy defense and then determine whether it applies? Can we just assume that the recognition power could sometimes be a valid defense? And can we just go to the second step of that, which is to decide whether here enforcement of the award would contravene the recognition power? Sure. I think as Valores squarely held, it does not. Recognition is a formal acknowledgement that a particular regime is the government of a state and it's a political rather than a judicial question. And contrary to the argument made by Venezuela, one does not implicitly recognize a foreign regime here with respect. And to the extent your question is, does assuming that there is a public policy here, is it the type of public policy that would qualify under the New York convention? Do we have to decide that question? No, I don't think you need to get there. I think that confirmation of an arbitral award is fundamentally different from recognizing a regime as legitimate or not legitimate government of a particular sovereign state. Here, the award is against the sovereign state of Venezuela. It is not against a particular regime. It was done, the award was issued based on acts of arbitration that was represented by the Maduro regime as the recognized and legitimate regime of Venezuela. Liability was determined when the Maduro regime was the recognized government of Venezuela represented by council here. The only issue that was determined in the arbitration in which the Maduro regime was not the recognized government of Venezuela was damages. And damages simply consisted of the unpaid dividends, the amount of the unpaid dividends, which was $52 million plus accumulated interest plus costs. So in terms of making determinations about liability, that was all done under the supervision of the recognized government and council here. I have a question about the procedural question. If I understand correctly, when VUS changed council earlier in the proceedings, the permanent court of arbitration invited VUS to provide Venezuela with a letter of representation, which showed the authorization for the new council to act on behalf of VUS. My first question is, do I have that part correct? That is my understanding, Your Honor. Did the permanent court of arbitration ask for and did you receive a power of attorney from the national assembly during the arbitration proceedings when the Maduro regime purported to replace the Curtis law firm? Not to my knowledge, Your Honor. Okay, that's for clarifying. Separately, although the court does not need to reach this issue, Venezuela has failed to demonstrate the existence of a qualifying public policy under the New York convention. The public policy exception is to be construed narrowly and applies only in clear-cut cases where enforcement would violate the foreign state's most basic notions of morality and justice. As to Venezuela's argument that the recognition power constitutes a qualifying public policy under the New York convention, the district court observed that Venezuela cites no case finding a public policy issue on facts similar to this case or anything close, and that Venezuela does not even attempt to justify its position that enforcement... You said we don't necessarily need to decide that question. You do not. I don't think you need to reach that. I think the lawyer says it's positive that you don't need to even get to whether the recognition doctrine is a public policy applicable under the New York convention. Okay, let me see. Judge Randolph, do you have any further questions? No, that's fine. Okay. Judge Walker? No. Okay. Mr. Parlow, we'll give you two minutes on rebuttal. Thank you. Mr. Parlow, before you launch into that, there's a question that is not on the record, and I don't expect you to... that you may know, but the attorneys who represented Venezuela after the Maduro regime was no longer recognized by the United States, they continued through the damages stage, is that correct? Yes, correct. They are acting for... purporting to act for the Venezuelans. But who paid those attorneys? Well... For their services during the... I don't know that for a fact, Your Honor, but I would assume that it was the Maduro regime. I do know that it was not the National Assembly U.S. recognized government. Okay. Okay. So, I think, you know, Judge Walker makes a very good point about the difference between Valores here, which is the distinction between a roving public policy exception and that doesn't exist under the exit convention, and that does exist here. And the difference, why that matters is that not New York convention awards are like private contracts. And we have a series of cases that we've cited where the contradiction between the enforcement of the contract and the formal recognition by the U.S. government was implicit. It didn't matter. It doesn't have to be... you don't have to sit here as a court and say, we formally acknowledge the Maduro regime as the government everywhere. What you have to look at is the effect. Under the New York convention is the effect of enforcing the award. And the recognition doctrine can be contradicted implicitly. It was in pink and the Supreme Court said, no matter what gloss be given to what the New York Court of Appeals' contrary decision is by not recognizing the... and if I it amounts to official disapproval or non-recognition of that government. That disapproval or non-recognition is in the face of the underlying policy adopted by the United States when it recognized the Soviet government. So you don't need a formal statement in the arbitration award. You don't need a formal statement in this court's decision under the New York convention. It is the effect of the awards enforcement that is what offends the U.S. public policy. And should be reversed. Mr. Perla, just a clarification on Judge Randolph's... on your answer to Judge Randolph's question. Tell me if this chronology is correct. The Curtis law firm represented Venezuela in the arbitration at the beginning. After that, the national assembly was recognized by the United States. After that, the Maduro regime fired the Curtis law firm. After that, the damages proceeding happened. Is that all correct? Your Honor, I'm not sure that we were fired, but we stopped taking instructions from the Maduro regime. And I do appreciate the question, Judge Walker, because I want to make something clear. On page 33 of the U.S.'s brief, they say that Curtis continued to serve as counsel for the Maduro regime after it had been recognized. And that's just plainly false. Your timing and chronology is correct, Judge Walker. We were acting for the U.S.-recognized government during the jurisdiction liability phase. Then the U.S. government derecognized the Maduro regime and recognized the national assembly. At that point, we began taking instructions from the national assembly, U.S.-recognized government, and we were no longer involved in the proceedings once the Maduro regime then entered with their new law purporting to act for Venezuela without giving us any notice. Okay. Are there no further questions? Yes, not by me. Okay. Thank you to both counsel. The case is submitted.
judges: Rao; Walker; Randolph